UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                         :

**RUDY MENDOZA,**

                        Plaintiff,

               **- against -**

**WARREN D. EDGE, CAPTAIN J. WHITE,
LIEUTENANT REGINALD BARR, L. PORTNOY,
WARDEN H. TELLEZ, TECHNICIAN FIELDS,
JOHN DOE #1, JOHN DOE #2, JOHN DOE,**

                         Defendants.
------------------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

20-CV-3032 (AMD) (TAM)

**ANN M. DONNELLY,** United States District Judge:

        Rudy Mendoza brings this *pro se* action alleging constitutional violations and seeking damages for injuries he allegedly sustained while detained at the Metropolitan Detention Center, Brooklyn ("MDC"). On September 2, 2020, I granted the plaintiff leave to proceed *in forma pauperis*, and dismissed his claims against Captain J. White, Lieutenant Reginald Barr and L. Portnoy for failure to state a claim, but granted him leave to file an amended complaint. (ECF No. 10 at 5.)

        On December 30, 2020, the plaintiff filed an amended complaint naming additional defendants. (ECF No. 17.) On February 25, 2021, the plaintiff filed another amended complaint dated October 26, 2020. (ECF No. 21). In light of the plaintiff's *pro se* status, I consider the allegations in both drafts (together, the "Amended Complaint"). *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may

consider such statements in such papers to supplement or clarify the plaintiff's pleaded allegations." (internal quotation marks and citations omitted)).

Now before the Court is the defendants' motion to dismiss the Amended Complaint. (ECF No. 39.) For the reasons that follow, the defendants' motion is granted.

## BACKGROUND

The plaintiff alleges that shortly after he arrived at the MDC on March 10, MDC officers placed him in solitary confinement in the Special Housing Unit ("SHU"). (ECF No. 17 at 3-4.) In April of 2020, he suffered from "very strong flu-like symptoms" that MDC staff believed were caused by COVID-19. (ECF No. 39 at 12.) At one point, he became so weak he could not get out of bed to get his food tray. (*Id.*) At least one MDC staff member, Officer Matos, was sufficiently alarmed by the plaintiff's condition that she made two requests for medical attention for the plaintiff. (*Id.*) After the second request, however, Special Investigative Services Technician Fields told Officer Matos that Capitan J. White ordered that the plaintiff was not to be removed from his cell without White's explicit permission. (*Id.* at 13.) The plaintiff alleges that after White issued his order, the plaintiff received no medical attention for his COVID-19 symptoms, even though COVID-19 was circulating through the MDC inmate population at that time. (*Id.*) The plaintiff recovered approximately two days later. (ECF No. 17 at 5; ECF No. 39 at 12.)

On April 28, 2020, after the plaintiff learned that staff members from other prisons arrived at the MDC to address staffing issues caused by the COVID-19 pandemic, he started a fire in his cell "as a peaceful and harmless way to get medical attention." (ECF No. 21 at 4.) MDC staff responded promptly and extinguished the fire "without difficulty." (*Id.*) The plaintiff asserts that he did not struggle or object when the guards handcuffed him. Nevertheless, they

slammed his face into the concrete floor. According to the plaintiff, defendants John Doe #1 and John Doe #2 punched the plaintiff in the face, head and torso. He was then taken to the prison barbershop where L. Portnoy and Lieutenant Reginald Barr joined the assault. Next, the plaintiff asserts, he was taken to an observation cell with inoperable cameras, at which point his ankles were shackled and a steel chain was placed around his waist to impede his mobility. Barr then allegedly ordered that the plaintiff be kept in these restraints for 24 hours, and that the mattress in his cell be removed. (ECF No. 17 at 5-6.)

As a result of the alleged assault, the plaintiff claims that he suffered lacerations and bruises to his face, head, chest, back, wrists and legs. Two of his teeth, his jaw and his nose were broken, and he urinated blood for two or three days after the assault. (*Id.* at 8.) Medical staff applied ointment and bandages to his wrists, but he got no further medical treatment. (*Id.*)

The plaintiff alleges that he was not permitted to join the general prison population "for an indeterminate amount of time." (ECF No. 17 at 4.) He also states that he was denied medical and dental care, telephone and visitation privileges as well as access to the law library, the commissary and his personal property, including legal papers. (*Id.*) The plaintiff asserts that MDC staff members interfered with his ability to use the prison's grievance procedures by refusing to give him the necessary forms (ECF No. 17 at 4); however, another inmate gave the plaintiff the forms. (ECF No. 37 at 3.) The plaintiff also alleges that he tried to send funds from his prison trust account to his family on two separate occasions, but that Warden Edge refused to authorize the withdrawal. (ECF No. 17 at 6-7.) The plaintiff claims that he brought his concerns to the attention of Warden Edge, who said he would investigate the denial of medical treatment and access to the law library and mail but that he would not give the plaintiff access to his

3

"personal and legal property," or authorize "telephone, commissary and visitation privileged unless Captain White approved." (*Id.* at 5.)

Finally, the plaintiff alleges MDC staff did not treat his chronic medical conditions, including an eye disease known as keratoconus, an unspecified liver condition and a toothache. (*Id.* at 8). The plaintiff alleges that his keratoconus has left him "essentially blind" in his right eye, and with "very poor" sight in his left eye. (ECF No. 21 at 8.) In his response to the defendants' motion to dismiss, the plaintiff includes additional detail: untreated keratoconus results in blindness and the only cure is an "eye transplant," which the BOP does not provide. (ECF No. 39 at 5-6.) According to the plaintiff, keratoconus is treated by a "constant dose of eyedrops" and a special kind of contact lens known as an "eyeglass," which an optometrist must prescribe and fit. The eyeglass enhances the patient's vision and prevents further deterioration of vision over time. (*Id.* at 6.) During the nine months the plaintiff spent at the MDC, medical staff "ignored" his requests for treatment, but did prescribe eye drops on one occasion. The plaintiff alleges he brought this lack of treatment to the attention of Wardens Edge and Tellez on multiple occasions, but that neither rectified the matter. (*Id.*) According to the plaintiff, "his eye sight has deteriorated significantly" since he left MDC, and he is "essentially blind from [his] right eye" and his "left eye is in worse condition than when [he] first arrived at MDC Brooklyn." (*Id.*)

## STANDARD OF REVIEW

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate" the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Rule 12(b)(6) dismissal is warranted when the complaint does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Specifically, the complaint must plead "enough facts to state a claim to relief

4

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court reviewing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6) must accept as true the complaint's factual allegations and draw all reasonable inferences in the non-moving party's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). Moreover, the Court must construe a *pro se* complaint "liberally" and interpret it to "rais[e] the strongest arguments [it] suggest[s]." *McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)). "This is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002).

While the plaintiff bears the burden of proving that subject matter jurisdiction exists, *Makarova*, 201 F.3d at 113, the defendants must establish that dismissal under Rule 12(b)(6) is warranted. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *abrogation on other grounds recognized by Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 94 (2d Cir. 2019).

## DISCUSSION

In the Amended Complaint, the plaintiff does not seek relief under any specific causes of action, but refers to the defendants' alleged constitutional violations. (*See* ECF No. 17 at 8-9.) In other filings, the plaintiff has also accused MDC staff of "negligence" (ECF No. 1 at 8; ECF No. 39 at 15.) For this reason, I construe the Amended Complaint as raising Federal Tort Claims Act ("FTCA") claims and *Bivens* claims. 28 U.S.C. §§ 1346(b), 2671 *et seq.*; *Bivens v. Six*

5

*Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). I analyze each claim in turn.

## I. FTCA Claims

The FTCA provides "the exclusive remedy" for non-constitutional tort claims arising from "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [her or] his office or employment." *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991); *accord* 28 U.S.C. § 2679(b)(1). FTCA actions may be directed against the United States, but not against individual federal employees. § 2679(d)(1); *see Leogrande v. New York*, No. 08-CV-3088, 2013 WL 1283392, at *14 (E.D.N.Y. Mar. 29, 2013) (citing *Myers & Myers Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975)). A plaintiff must exhaust administrative remedies before filing an FTCA action. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Specifically, a plaintiff must "present[] the claim to the appropriate Federal agency," and the claim must have been "finally denied by the agency." 28 U.S.C. § 2675(a); *accord* § 2401(b). The plaintiff bears the burden of "both plead[ing] and prov[ing] compliance" with the exhaustion requirement. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987).

The Amended Compliant names only individual federal employees as defendants. (ECF No. 17 at 1.) Because the plaintiff does not bring suit against the United States, the Court does not have subject matter jurisdiction over the FTCA claims, and dismissal is warranted. *See McNeil*, 508 U.S. at 113; *Collins v. U.S. Postal Serv.*, 462 F. Supp. 3d 231, 241 (E.D.N.Y. 2020).

## II. The *Bivens* Claims

A *Bivens* claim is brought against federal officials in their individual capacities. *See McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016). To state a *Bivens* claim, a plaintiff

must plausibly allege "depriv[ation] of a constitutional right by a federal agent acting under color of federal authority," and that "the individual defendant[s were] personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006). The Supreme Court has limited the availability of *Bivens* remedies to three kinds of cases: a Fourth Amendment claim arising from an unlawful search and arrest, *Bivens*, 403 U.S. 388; a Fifth Amendment claim based on sex-discrimination in the workplace, *Davis v. Passman*, 442 U.S. 228 (1979); and an Eighth Amendment claim for failure to provide adequate medical treatment. *Carlson v. Green*, 446 U.S. 14 (1980). "[T]he Supreme Court has refused to extend *Bivens* to contexts beyond the specific clauses of the specific amendments for which a cause of action had been implied, or even to other classes of defendants facing liability under those same clauses." *Sanford v. Bruno*, No. 17-CV-5132, 2018 WL 2198759, at *4 (E.D.N.Y. May 14, 2018). The Supreme Court has instructed lower courts that "[e]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).

      a.    **The Plaintiff's Allegations**

A court determining whether a *Bivens* remedy is available conducts a two-part inquiry. *McGowan*, 825 F.3d at 123. First, the court "determine[s] whether the underlying claims extend *Bivens* into a new context." *Id.* (internal quotation marks omitted). "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Abbasi*, 137 S. Ct. at 1859-60. If the context is new, the court decides "(a) whether there is an alternative remedial scheme available to the plaintiff, and, even if there is not, (b) whether special factors counsel hesitation in creating a *Bivens* remedy." *McGowan*, 825 F.3d at 123 (internal quotation marks omitted).

The plaintiff alleges that the defendants subjected him to "brutal conditions" in the SHU, withheld his telephone and visitation privileges and denied him access to the commissary. None

7

of these claims falls within the three factual contexts the Supreme Court has recognized as *Bivens* claims. *See Abbasi* 137 S. Ct. at 60 (detainee challenge to the conditions of confinement at the MDC meaningfully different from previous *Bivens* cases); *Gonzales v. Hasty*, 269 F. Supp. 3d 45, 59 (E.D.N.Y. 2017) (failure of MDC staff to conduct meaningful reviews of a plaintiff's placement in the MDC SHU presented a novel *Bivens* context.)

The same is true of the plaintiff's allegations that the defendants denied him access to his inmate trust fund. *See Atkinson v. Broe*, No. 15-CV-386, 2019 WL 231754, at *7 (W.D. Wis. Jan. 16, 2019) ("Plaintiff's *Bivens* claims that defendants unlawfully encumbered his trust fund account are premised on due-process violations that the Supreme Court does not recognize as cognizable under *Bivens*, and it would be improper to recognize a new theory of relief in this case.")

Liberally construed, the plaintiff's allegations that he was denied access to the law library and his legal mail raise First Amendment access to the courts claims, but the Supreme Court has never recognized First Amendment claims in the *Bivens* context. *See, e.g.*, *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *White v. Hess*, No. 14-CV-3339, 2020 WL 1536379, at *6 (E.D.N.Y. Mar. 31, 2020) ("[N]ationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment." (internal quotation marks and citations omitted)).

The plaintiff's allegations that the defendants used excessive force against him when they responded to the fire he started in his cell similarly fall outside of *Bivens'* purview. "Courts have consistently found that excessive force cases arising under either the Fifth or Eighth Amendment to present new *Bivens* contexts." *Edwards v. Gizzi*, No. 20-CV-7371, 2022 WL 303393, at *6

(S.D.N.Y. Feb 2, 2022) (citing *Ojo v. United States*, No. 16-CV-4112, 2019 WL 3852391, at *13 (E.D.N.Y. Aug. 15, 2019) (holding that an Eighth Amendment excessive force claim presented a new *Bivens* context), *report and recommendation adopted*, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019)).

Because the plaintiff's allegations of excessive force and the denial of various prison privileges present new *Bivens* contexts, I analyze whether there are alternative processes that protect the plaintiff's interests and whether other special factors counsel hesitation before implying a new *Bivens* remedy. The plaintiff has an alternative process for seeking relief—the FTCA. The Supreme Court held in *Abbasi* that where "Congress has created any alternative, existing process for protecting the [injured party's] interest that itself may amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages," 137 S. Ct. at 1858 (alterations in original) (internal quotation marks omitted). Courts in this circuit have dismissed *Bivens* claims where an FTCA claim was available. *See, e.g.*, *Oliveras v. Basile*, 440 F. Supp. 3d 365 (S.D.N.Y. 2020); *Martinez v. D'Agata*, No. 16-CV-44, 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019); *Turkmen v. Ashcroft*, No. 02-CV-2307, 2018 WL 4026734 (E.D.N.Y. Aug. 13, 2018).

In addition to the FTCA, the plaintiff could have sought other equitable remedies to address the allegedly unconstitutional conditions of his incarceration, including *habeas corpus* relief under 28 U.S.C. § 2241. *Carmona v. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001); *Sanford v. Bruno*, NO 17-cv-5132, 2018 WL 2198759 at *6 (E.D.N.Y. May 14, 2018) ("Deprivations of constitutional rights while in custody can generally be addressed by *habeas corpus* relief."); *Abbasi*, 137 S. Ct. at 1863 (The "*habeas* remedy" may "provide [] a faster and

more direct route to relief than a suit for money damages."); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 60 (same).

In short, the plaintiff's allegations would require me to recognize new *Bivens* claims, and there are alternate processes that protect the plaintiff's rights. Accordingly, the plaintiff's claims that the defendants restricted his access to prison facilities and his personal property, as well as the plaintiff's allegations of excessive use of force on April 28, 2020 are dismissed.[1]

### b. Plaintiff's Eighth Amendment Deliberate Indifference Claims

Unlike the plaintiff's allegations about the conditions of his incarceration, his claim that the defendants were deliberately indifferent to his health bears an "extremely strong resemblance" to the Eighth Amendment deliberate indifference claim at issue in *Carlson*. *See Laurent v. Borecky*, No. 17-CV-3300, 2018 WL 2973386, at *5 (E.D.N.Y. June 12, 2018) (*Bivens* remedy available to plaintiff alleging deliberate indifference to serious medical needs).

"To establish an Eighth Amendment violation arising out of inadequate medical treatment, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))." There are two requirements: "First, the prisoner must prove that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Id.* (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108

---

[1] In the plaintiff's response, he argues that in *Taylor v. Riojas*, 141 S. Ct. 52 (2020), the Supreme Court recognized the availability of a *Bivens* remedy for a prisoner challenging the unsanitary conditions of his incarceration. The plaintiff argues his claims fall within this newly recognized *Bivens* context. (ECF No. 39 at 4-5.) Although there may be some factual similarities to the plaintiff's allegations, *Taylor* is different; the plaintiff in that case was in state custody and sued state prison officials under 42 U.S.C. § 1983. Here, the plaintiff is in federal custody and is suing federal officers, and cannot state a claim under 42 U.S.C. § 1983.

(2d Cir. 1998)). "Second, the prisoner must prove that the charged official acted with a sufficiently culpable state of mind." *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). This second, subjective prong requires that the prisoner prove that the defendants knew and disregarded an excessive risk to inmate health and safety. *Id.*

### i. COVID-19

The plaintiff plausibly alleges that the deprivation of medical attention while he was suffering from COVID-19 symptoms constituted a condition that could have produced death, degeneration or extreme pain. "It is undisputed—and, indeed, by now common knowledge—that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death." *Latimer v. Annucci*, No. 21-CV-1275, 2022 WL 1137055, at *4 (S.D.N.Y. Apr. 18, 2022) (internal quotation marks omitted). Prison officials have an affirmative obligation to protect the inmates under their care from infectious diseases. *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996).

Nonetheless, "delay in treating a life-threatening condition may not violate the Eighth Amendment if the lapse does not cause any further harm beyond that which would occur even with complete medical attention." *Graham v. Wright*, No. 01-CIV-9613, 2004 WL 1794503, at *4 (S.D.N.Y. Aug. 10, 2004), *aff'd*, 136 F. App'x 418 (2d Cir. 2005). Similarly, "although demonstrable adverse medical effects may not be required under the Eighth Amendment, the absence of present physical injury will often be probative in assessing the risk of future harm." *DiChiara v. Wright*, No. 06-CV-6123, 2011 WL 1303867, at *7 (E.D.N.Y. Mar. 31, 2011) (quoting *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (internal quotation marks omitted)).

The plaintiff alleges that the defendants ignored his request for medical attention for COVID-like symptoms, and that Capitan White and Technician Fields denied MDC staff's

11

request that the plaintiff get medical help. (*See* ECF No. 17.) The plaintiff concedes, however, that he was ill for only two days, and he was "recovering from COVID-19 like symptoms" when he deliberately set a fire in his cell on April 28, 2020. (ECF No. 17 at 5; ECF No. 39 at 12.) The plaintiff does not allege he had a severe case of COVID-19, for example that he had acute respiratory symptoms that required aggressive medical intervention.

Because the plaintiff does not allege that he suffered any lasting harm from the defendants' failure to treat his COVID-19 symptoms, he has not satisfied the first prong of a deliberate indifference claim under the Eighth Amendment.[2]

### ii. Keratoconus

The plaintiff raises another deliberate indifference claim against Wardens Edge and Tellez regarding their failure to treat his keratoconus. Even assuming that keratoconus is a serious medical condition that satisfies the objective prong of an Eighth Amendment deliberate indifference claim, the plaintiff does not provide sufficient details to satisfy the subjective prong, which requires the plaintiff to establish that a charged official acted with a culpable state of mind equivalent to criminal recklessness. *Adekoya v. Holder*, 751 F. Supp. 2d 688, 697 (S.D.N.Y. 2010). To satisfy this requirement "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (internal quotation marks and citation omitted.)

The plaintiff does not plead any facts in the Amended Complaint establishing that Wardens Edge and Tellez knew that he had keratoconus, much less that they acted with criminal

---

[2] Because the defendants' alleged deliberate indifference to the plaintiff's COVID-19 symptoms did not result in any serious injury or harm, the plaintiff's allegations would present a new *Bivens* context that is much different from the life-threatening asthma attack that the plaintiff suffered in *Carlson*.

12

recklessness to deny the plaintiff treatment. While he makes a passing reference to Wardens Edge and Tellez in his response, he alleges merely that "neither Wardens D. Edge nor H. Tellez rectified [the medical staff's denial of medical attention] after personally addressing them on multiple occasions." (ECF No. 39 at 6.) This conclusory allegation does not say anything about either defendants' state of mind or the extent to which they knew anything about keratoconus, and thus does not satisfy the subjective prong of a deliberate indifference claim under the Eighth Amendment. *See Adekoya* 751 F. Supp. 2d at 697 (holding that mere awareness of a plaintiff's medical needs failed to satisfy the subjective prong of a claim for deliberate indifference); *Gray v. Metro. Det. Ctr.*, No. 09-CV-4520, 2011 WL 2847430, at *11 (E.D.N.Y. July 15, 2011) (dismissing Eighth Amendment deliberate indifference claim where plaintiff did not allege that defendants had any personal involvement in the plaintiff's medical care or his failure to obtain other medical treatment).

### iii. Stomach Pain and Toothache

Finally, the plaintiff alleges in the Amended Complaint that "he was never provided medical care for his . . . stomach pains and toothache. (ECF No. 17 at 8.) The allegations do not describe medical conditions that are sufficiently serious to satisfy the objective prong of an Eighth Amendment deliberate indifference claim. *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (holding that various unspecified stomach disorders did not qualify as a serious medical need); *Malsh v. Austin*, 901 F. Supp. 757, 762 (S.D.N.Y. 1995) (observing that a "toothache does not qualify as a serious medical need" (internal quotation marks and citation omitted)).

**III.     PLRA Exhaustion**

The Prison Litigation Reform Act ("PLRA") bars prisoners from bringing suit about prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA "requires proper exhaustion," meaning that the prisoner must "compl[y]

13

with the system's critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93, 95 (2006). Specifically, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Exhaustion is mandatory, as long as remedies are actually available. *See Ross v. Blake*, 578 U.S. 632 (2016). Remedies are unavailable if the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use," *id.* at 643, or if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[.]" *Id.* at 644.

The Federal Bureau of Prisons ("BOP") permits inmates who are dissatisfied with any condition of their confinement to seek relief through the BOP's Administrative Remedy Program ("ARP"). To exhaust their remedies under the ARP, inmates must proceed through several levels of administrative review. First, they must present their claims informally to prison staff. 28 C.F.R. § 542.13(a). If the informal resolution process is unsuccessful, the inmate may submit a written "Administrative Remedy Request" (BP-9) to the warden within "20 calendar days following the date on which the basis for the Request occurred." *Id.* § 542.14(a). The warden then has 20 days in which to investigate and respond to the complaint. *Id.* § 542.18. If the complaint is denied, the inmate may submit an appeal (BP-10) to the appropriate Regional Director within 20 days of the warden's decision. *Id.* § 542.15(a). The Regional Director has 30 days to respond to the appeal. *Id.* § 542.18. A negative decision by the Regional Director may be appealed, in turn, to the Office of General Counsel within 30 days. *Id.* § 542.15(a). The Office of General Counsel then has 40 days to respond to the appeal (BP-11). *Id.* § 542.18. The time limits for responding to an inmate's administrative remedy requests may be extended by the

14

agency. *Id.* The regulations also provide that "[i]f an inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.* An inmate must pursue his claim through all the formal administrative steps above to satisfy the PLRA's exhaustion requirement. *See Barney v. Bureau of Prisons*, No. 02-CV-5284, 2004 WL 2810108, at *1 (E.D.N.Y. Dec. 8, 2004) (observing that the PLRA requires an inmate to challenge prison conditions in question to the highest level of administrative review before filing suit); *see also Macias v. Zenk*, 495 F.3d 37, 42-43 (2d Cir. 2007).

The plaintiff alleges he sought redress for his grievances through the ARP. For example, he voiced his complaints to Warden Edge on at least two occasions during Warden Edge's weekly rounds. (ECF No. 37 at 3.) The plaintiff argues that the defendants frustrated his attempts to seek redress through the ARP because for three months after he arrived at the MDC, they did not assign him a counselor who would give him the necessary BP-9 forms. (*Id.*) He concedes, however, that he got the necessary forms from other inmates, and successfully filed BP-9s at least three times with both Wardens Edge and Tellez. (*Id.* 5). The plaintiff says that Wardens Edge and Tellez acknowledged that they received the BP-9 forms, but refused to address the plaintiff's grievances in writing, thereby preventing him from appealing their denials to the Northeast Regional Office in Philadelphia. But as discussed above, the ARP provides that inmates may treat the lack of an official response to an ARP as a denial for the purpose of appeal. Indeed, in his response, the plaintiff alleges that he successfully filed two BP-10 forms with the Northeast Regional Office while he was incarcerated at the MDC, but received no response. (*Id.*) If this is correct, he could have escalated his grievances to the BOP General

15

Counsel's office by filing a BP-11; if the Office of the General Counsel did not respond within the requisite 30-day period, the plaintiff would have met the PLRA's exhaustion requirement.

The exhaustion requirement is mandatory and must be strictly construed, and I have no discretion to waive it. Accordingly, I must dismiss the plaintiff's claims. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Gumbs v. Dynan*, No. 11-CV-857, 2012 WL 3705009, at *6 (E.D.N.Y. Aug. 26, 2012) ("Courts must construe the exhaustion requirement strictly."). "[A] district court . . . may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013)).

## CONCLUSION

For the reasons explained above, the Amended Complaint, filed *in forma pauperis*, is dismissed. The Court grants the plaintiff leave to file an amended complaint within thirty days of this order. If the plaintiff does not file an amended complaint within the time allowed or show good cause why he cannot comply, the Clerk of Court is respectfully directed to enter judgment and close this case.

If the plaintiff decides to file an amended complaint, it should be titled, "SECOND AMENDED COMPLAINT," and bear the same docket number as this order—20-CV-3032 (AMD) (TAM). The plaintiff is reminded that an amended complaint will replace all of his previous complaints. That is, the amended complaint must stand on its own without reference to the original complaint or the Amended Complaint. The plaintiff must set forth facts to support his claims. For example, if the plaintiff wishes to bring an FTCA claim, he must name the United States as a defendant and provide facts establishing that he exhausted his administrative BOP remedies pursuant to the PRLA.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
July 12, 2022