

RECEIVED
OCT 19 2022
PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUDY MENDOZA — PLAINTIFF

V.

THE UNITED STATES OF AMERICA — DEFENDANT

DOCKET NO. 20-CV-3032 (AMD)(TAM)
SECOND AMENDED COMPLAINT

JURISDICTION: FEDERAL TORTS CLAIMS ACT AND BIVENS V.
SIX UNKNOWN NAMED AGENTS OF FEDERAL BUREAU OF
NARCOTICS, 403 U.S. 388 (1971). 28 U.S.C 1331.

JURY DEMAND : YES.

1. THE PARTIES :

A. NAME AND ADDRESS OF PLAINTIFF.

RUDY MENDOZA #90731-054
U.S. PENITENTIARY MAX
P.O. BOX 8500
FLORENCE, CO. 81226

1.

B. LIST OF DEFENDANTS

    1. WARDEN D. EDGE
       METROPOLITAN DETENTION CENTER
       P.O. BOX 329002
       BROOKLYN, NEW YORK, 11232

    2. WARDEN H. TELLEZ
       METROPOLITAN DETENTION CENTER
       P.O. BOX 329002
       BROOKLYN, NEW YORK, 11232

    3. CAPTAIN J. WHITE
       METROPOLITAN DETENTION CENTER
       P.O. BOX 329002
       BROOKLYN, NEW YORK. 11232

    4. LIUTENANT REGINALD BARR
       METROPOLITAN DETENTION CENTER
       P.O. BOX 329002
       BROOKLYN, NEW YORK. 11232

    5. S.I.S L. PORTNOY
       METROPOLITAN DETENTION CENTER
       P.O. BOX 329002
       BROOKLYN, NEW YORK. 11232

6. S.I.S TECHNICIAN FIELDS
   METROPOLITAN DETENTION CENTER
   P.O. BOX 329002
   BROOKLYN, NEW YORK. 11232

7. JOHN DOE #1
8. JOHN DOE #2
9. JOHN DOE #3
10. JANE DOE #4
    METROPOLITAN DETENTION CENTER
    P.O. BOX 329002
    BROOKLYN, NEW YORK. 11232

2. STATEMENT OF CLAIMS:

PLACE OF OCCURENCE? MDC BROOKLYN

DATE OF OCCURENCE? MARCH 10, 2020 — DECEMBER 2, 2020

FACTS: I, PRO SE PLAINTIFF RUDY MENDOZA, ARRIVED AT
MDC BROOKLYN ON A WRITTEN ORDER ISSUED BY THE U.S.
SUPREME COURT ON MARCH 10, 2020.
    IT IS IMPORTANT TO NOTE THAT AT THIS PRECISE MOMENT
I WAS THE TARGET OF A FEDERAL GRAND JURY INVESTIGATION
IN THE MIDDLE DISTRICT OF PENNSYLVANIA. HOWEVER, AS OF
NOW, NO CHARGES AGAINST ME HAVE BEEN FILED NEITHER
CIVIL NOR CRIMINAL

3.

BECAUSE OF THIS GRAND JURY INVESTIGATION, WHICH STEMMED FROM AN INCIDENT THAT OCCURED WHILE I WAS HOUSED AT USP CANAAN IN PENNSYLVANIA, BOP STAFF UNDER THE ORDERS OF CAPTAIN J. WHITE AND WARDEN D. EDGE, KNOWINGLY AND DELIBERATELY VIOLATED AND CONSPIRED TO VIOLATE MY CONSTITUTIONAL RIGHTS IN A MULTITUDE OF WAYS, FROM THE MOMENT I ARRIVED ON MARCH 10, 2020. UNTIL THE DAY I LEFT MDC ON DECEMBER 2, 2020.

BEGINNING FIRST, BY PUTTING ME IN HOLDING CELLS AND THEN IN THE GENERAL POPULATION AROUND VIOLENT INMATES WHO I'M DOCUMENTED TO HAVE SEPERATIES AGAINST.

THEN I WAS ESCORTED TO THE SPECIAL HOUSING UNIT (SHU) BY LIUTENANT V. TURNER, WHO WHILE ESCORTING ME JOKED AND LAUGHED ABOUT HOW CLOSE I WAS TO POSSIBLY GETTING BRUTALLY BEATEN AND ASSAULTED AND STABBED BY SOME OF THESE INMATES, AND HOW HE SAVED MY LIFE.

I WAS PUT IN SOLITARY CONFINEMENT AND GIVEN A DETENTION ORDER SIGNED BY LIUTENANT TURNER, STATING THAT I WAS ON MAX CUSTODY STATUS, CELL AND RECREATION ALONE, AND LIUTENANT MOVE FOR AN INDETERMINATE AMOUNT OF TIME.

STARTING THE VERY NEXT MORNING ON MARCH 11, 2020 I SIGNED MYSELF UP FOR MY ONE HOUR RECREATION AND WAS DEPRIVED. INITIALLY I WAS TOLD THAT IT WAS DUE TO THE ABSENCE OF A LIUTENANT, BUT WHEN A LIUTENANT

4.

FINALLY CAME AROUND, I WAS TOLD THAT CAPTAIN WHITE ORDERED THAT I WAS NOT TO BE ESCORTED OUT OF MY CELL UNDER ANY CIRCUMSTANCE UNTIL HE PERSONALLY ADDRESSED ME FIRST. CAPTAIN WHITE MADE HIS ROUNDS SOON AFTER, BUT AFTER BRIEFLY INTRODUCING HIMSELF HE WALKED AWAY WITHOUT ALLOWING ME TO ADDRESS HIM.

SEVERAL DAYS LATER CAPTAIN WHITE MADE HIS ROUNDS AGAIN THIS TIME IN THE COMPANY OF S.I.S L. PORTNOY. AFTER STATING MY GRIEVANCES OVER THE SHOWERS, LAW LIBRARY, AND RECREATION THAT WERE BEING DEPRIVED TO ME, CAPTAIN WHITE BROUGHT UP THE INCIDENT AT USP CANAAN AND STATED THAT HE'D BEEN PERSONALLY INVOLVED IN THE INVESTIGATION AND HAD REVIEWED THE VIDEO SURVEILLANCE OF THE INCIDENT. S.I.S PORTNOY THEN ATTEMPTED TO INTERROGATE ME BUT I RESPECTFULLY REFUSED TO ANSWER AND STATED THAT DUE TO THE SERIOUSNESS OF THE INCIDENT I COULDN'T COMMENT ABOUT THE MATTER. CAPTAIN WHITE PERSISTED AND ASSURED ME THAT HE JUST WANTED TO HEAR MY VERSION OF EVENTS AND THAT HE WOULDN'T TESTIFY AGAINST ME IF I GOT CHARGED. AGAIN I DECLINED TO COMMENT AND THEN HE AND S.I.S PORTNOY BEGAN TO THREATEN ME. THEIR INTIMIDATION TACTICS BEGAN OVER PRIVILEGES AND WHAT WAS ALREADY BEING DENIED TO ME. WHEN THAT DIDN'T WORK, THEY THREATENED TO PUT ME BACK IN GENERAL POPULATION, THIS TIME LONG ENOUGH FOR ME TO GET STABBED AND KILLED.

5.

AFTER I REFUSED TO SPEAK AGAIN, CAPTAIN WHITE AND S.I.S PORTNOY LEFT AND THAT'S WHEN ALL MY ISSUES BEGAN.

I ADDRESSED WARDEN EDGE DURING HIS WEEKLY ROUNDS ABOUT THE CONDITIONS I WAS BEING SUBJECTED TO. PLUS THE FACT THAT I HAD YET TO BE ASSIGNED A COUNSELOR. FROM THEREON, LIEUTENANT BARR, WHO WAS THE SHU LIEUTENANT AT THE TIME, WOULD SHOW UP AND HAVE ME CHOOSE BETWEEN A SHOWER, ONE HOUR OF RECREATION, OR ONE HOUR IN THE LAW LIBRARY. ON SEVERAL OCCASSIONS HE EXPLAINED THAT DUE TO MY STATUS AND THE FACT THAT I WAS THE ONLY INMATE THERE ON LIEUTENANT MOVE, IT WAS A CONSTANT HASSLE FOR HIM TO BE GOING FROM ONE SIDE OF THE FACILITY TO THE OTHER JUST FOR ME. HE ALSO ADVISED ME TO SPEAK TO CAPTAIN WHITE ABOUT THESE CONDITIONS BECAUSE HE WAS IN CHARGE OF SECURITY.

I ADDRESSED WARDEN EDGE AGAIN THE FOLLOWING WEEK. THIS TIME I EXPLAINED TO HIM THAT ON TOP OF BEING DEPRIVED OF MY ONE HOUR RECREATION AND LAW LIBRARY, I WAS ALSO BEING SUBJECTED TO THE SAME PUNISHMENT THAT INMATES WHO RECEIVE INCIDENT REPORTS AND ARE SANCTIONED BY A DESIGNATED HEARING OFFICER TO SHU TIME ARE SUBJECTED TO. I ASKED HIM WHY I WAS NOT BEING ALLOWED SOME OF MY PERSONAL AND LEGAL PROPERTY, COMMISSARY, TELEPHONE, AND VISITATION PRIVILEGES IF I HAD NOT DONE ANYTHING TO PUT ME ON RESTRICTION. I HAD BEEN MAINTAINING CLEAR CONDUCT AND I WAS THERE DUE TO MY SENTENCE BEING

6.

VACATED BY THE U.S. SUPREME COURT. WARDEN EDGE STATED THAT NO ONE IN THE SHU IS ALLOWED PERSONAL PROPERTY AND IF I HAD AN ISSUE TO FILE A GRIEVANCE. I REMINDED HIM THAT I HAD NO COUNSELOR TO PROVIDE ME WITH THE FORM AND AGAIN HE SAID HE WOULD HAVE ONE ASSIGNED TO ME.

PRIOR TO ARRIVING AT MDC I HAD SEVERAL APPOINTMENTS WITH TWO DIFFERENT EYE SPECIALISTS ON THE OUTSIDE. THEY DIAGNOSED ME WITH A SERIOUS EYE DISEASE KNOWN AS KERATOCONUS ON BOTH OF MY EYES. KERATOCONUS IS ESSENTIALLY A MISSHAPEN EYEBALL DUE TO A DAMAGED CORNEA AND WHEN LEFT UNTREATED IT RAPIDLY CAUSES LOSS OF EYE SIGHT. ACCORDING TO BOTH EYE SPECIALISTS, THE ONLY CURE FOR KERATOCONUS IS AN EYE TRANSPLANT. THE ONLY WAY TO TREAT IT IS WITH A CONSTANT DOSE OF EYE DROPS AND WITH A PRESCRIBED EYE GLASS. DURING MY LAST VISIT TO OUTSIDE OPTHALMOLOGY, THE RECORD WILL SHOW THAT I WAS SCHEDULED TO BE FITTED FOR AN EYE GLASS. — AN EYE GLASS IS A CONTACT LENSE MADE OF GLASS THAT NOT ONLY ENHANCES VISION, BUT ALSO REDUCES FURTHER DAMAGE OVER TIME —

DESPITE SUBMITTING COUNTLESS MEDICAL REQUEST SLIPS FOR EYE DROPS, EYE GLASSES AND AN EVALUATION TO BE FITTED FOR THE PRESCRIBED EYE GLASS. EVERY SINGLE ONE OF MY REQUESTS WENT UNANSWERED.

ON OR ABOUT MARCH 23, 2020, LIUTENANT BARR FINALLY GOT TIRED OF ME CONSTANTLY COMPLAINING ABOUT MY LAW LIBRARY, RECREATION AND MEDICAL NEEDS BEING IGNORED.

7.

AND HE DECIDED TO MOVE ME FROM THE MORE SECLUDED WEST SHU, TO THE MORE POPULATED EAST WHERE I WOULD HAVE A SHOWER IN MY CELL.

IMMEDIATELY AFTER MOVING I ENCOUNTERED OTHER MAX CUSTODY INMATES IN THE EAST SHU. LIKE ME, THESE INMATES WERE IN SOLITARY CONFINEMENT SOLELY DUE TO THEIR STATUS. HOWEVER, UNLIKE ME THEY WERE BEING ALLOWED ALL THEIR PRIVILEGES — REGULAR COMMISSARY, 300 TELEPHONE MINUTES, AND VISITATIONS — WITH THE EXCEPTION OF E-MAILS.

ONCE AGAIN I ADDRESSED WARDEN EDGE DURING HIS WEEKLY ROUNDS. VERY RESPECTFULLY I INQUIRED ABOUT HIS MEDICAL STAFF IGNORING MY SICK CALL REQUESTS. I BRIEFLY EXPLAINED ABOUT MY EYE DISEASE AND HOW UNBEARIBLY IRRITATING MY EYES GET WITHOUT EYEDROPS AND GLASSES. I MENTIONED THAT I WAS NOT BEING ALLOWED TO BUY EYEDROPS FROM COMMISSARY AND HIS MEDICAL STAFF WAS NOT PRESCRIBING THEM. I ALSO ASKED HIM ABOUT ACCESS TO COMMISSARY, TELEPHONE, AND VISITATIONS LIKE THE REST OF THE MAX CUSTODY INMATES, AS WELL AS THE STATUS OF MY COUNSELOR. WARDEN EDGE REPLIED THAT HE'D ALREADY ASSIGNED ME A COUNSELOR AND I'D BE HEARING FROM HIM SOON ENOUGH HE ALSO ASSURED ME THAT HE'D SEE ABOUT MY MEDICAL NEEDS BUT AS FAR AS MY PRIVILEGES I HAD TO SPEAK WITH CAPTAIN WHITE. I ASKED HIM WHY HIM BEING THE WARDEN COULDN'T DIRECTLY ADDRESS THIS ISSUE? AND HE

8.

SIMPLY RESPONDED THAT HE ONLY DEALT WITH BLACK INMATES AND CAPTAIN WHITE DEALT WITH ALL THE REST. I TOLD HIM THAT THAT SOUNDED LIKE RACIAL DISCRIMINATION AND AGAIN HE ENCOURAGED ME TO FILE A GRIEVANCE BEFORE HE WALKED AWAY.

BY APRIL 28, 2020 MY SITUATION HAD GOTTEN ALOT WORSE. NOT A SINGLE TIME HAD I BEEN ALLOWED MY ONE HOUR RECREATION NOR LAW LIBRARY. MY SICK CALL REQUESTS WERE STILL BEING IGNORED, I STILL HAD NO COUNSELOR TO PROVIDE ME THE GRIEVANCE FORMS, AND I HAD SPENT THE PREVIOUS 72 HOURS SICK WITH WHAT SHU OFFICER MS. MATOS WAS CERTAIN WERE COVID-19 SYMPTOMS. BY THIS TIME THE COVID PANDEMIC WAS SPIRALING OUT OF CONTROL AND I COULD BARELY STAND TO GRAB MY FOOD TRAY. WHILE SICK, OFFICER MATOS ATTEMPTED TO GET ME MEDICAL ATTENTION ON AT LEAST TWO SEPERATE OCCASIONS. THE FIRST TIME HER CALL WAS IGNORED, THE SECOND TIME S.I.S TECHNICIAN FIELDS CALLED HER BACK INSTRUCTING THAT I WAS NOT TO BE ALLOWED OUT OF MY CELL UNDER ANY CIRCUMSTANCE. OFFICER MATOS WENT ON TO ADVICE ME THAT I SHOULD SPEAK WITH CAPTAIN WHITE BECAUSE CLEARLY THIS WAS THE ONLY SOLUTION TOWARDS MY CONDITIONS.

WORST OF ALL, WARDEN EDGE WAS NOW IGNORING ME DURING HIS WEEKLY ROUNDS. I HAD MANAGED TO OBTAIN A BP-9 FORM FROM ANOTHER MAX CUSTODY INMATE, AND AFTER FILLING IT OUT AND FILING IT, THE LAST QUESTION

9.

THAT I WAS ABLE TO PERSONALLY ASK WARDEN EDGE, WAS IF HE HAD RECEIVED THE GRIEVANCE. HE STATED THAT HE DID INDEED RECEIVED IT BUT RESPONDED VERBALLY AND NEVER PROVIDED ME WITH A WRITTEN RESPONSE FOR ME TO PROPERLY CONTINUE THE GRIEVANCE PROCESS.

AT APPROXIMATELY 12:46 P.M ON APRIL 28, 2020, I WAS IN CELL 30 IN RANGE 4 WHEN BOP STAFF FROM ALL OVER THE COUNTRY THERE AS COVID RELIEF, WERE MAKING SHU ROUNDS. AS AN ACT OF DESPERATION DUE TO MY VERY UNIQUE AND BRUTAL CONDITIONS, I DECIDED THAT ONLY A DRASTIC ACTION WOULD GRAB THE ATTENTION OF HIGH RANKING BOP OFFICIALS NOT FROM MDC BROOKLYN. WHAT I DID WAS SET A SHEET ON FIRE INSIDE MY CELL WHERE ONLY I WOULD BE DIRECTLY IN HARMS WAY, THEN I CALLED STAFF TO COME PUT OUT THE FIRE.

A LARGE NUMBER OF OFFICERS RUSHED TO MY CELL AND EASILY EXTINGUISHED THE FIRE. I WAS ORDERED TO SUBMITT TO RESTRAINTS AND I WILLINGLY DID SO. AS SOON AS I STUCK MY HANDS OUT THE FOOD SLOT, MY ARMS WERE VIOLENTLY YANKED OUT AS THE DOOR OPENED AND I WAS IMMEDIATELY SLAMMED FACE FIRST INTO THE CONCRETE FLOOR. UNABLE TO PROTECT MY HEAD AND FACE WITH MY ARMS, NUMEROUS OFFICERS BEGAN PUNCHING AND KICKING ME AND SLAMMING MY HEAD ON THE GROUND. I WAS THEN DRAGGED BY MY HANDCUFFED ARMS OUT OF THE RANGE AND INTO A HOLDING CELL WITH NO CAMERA WHERE THE BEATING CONTINUED. BY THIS TIME S.I.S

10.

TECHNICIANS FIELDS AND L. PORTNOY AND OTHERS UNDER THE SUPERVISION OF SHU LIUTENANT BARR JOINED IN THE BEATING. PUNCHING AND KICKING ME WHILE HANDCUFFED AND SHACKLED AT THE FEET.

AFTER A BRIEF STOP IN THE INFIRMARY WHERE MEDICAL STAFF APPLIED OINTMENTS AND BANDAGES TO MY WOUNDS. I WAS TAKEN TO RANGE 4 IN THE SHU AND PUT IN WHAT WAS SUPPOSED TO BE AN OBSERVATION CELL — EXCEPT UNLIKE AN OBSERVATION CELL UNDER BOP POLICY, THIS CELL HAD AN INOPERABLE CAMERA AND EMERGENCY BUTTON. —

PRIOR TO PUTTING ME IN THE CELL AS FURTHER EXCESSIVE PUNISHMENT, LIUTENANT BARR HIMSELF RETRIEVED THE MATTRESS INSIDE THE CELL. HE STATED THAT I WAS NOT TO BE GIVEN A MATTRESS FOR AT LEAST 24 HOURS. WHEN I PLEADED TO HIM THAT THE HANDCUFFS, SHACKLES, AND BELLY CHAIN AROUND MY WAISTE WHICH DRASTICALLY LIMITS MOVEMENT WERE TOO TIGHT. HE AND HIS STAFF RESPONDED WITH ANOTHER VICIOUS FLURRY OF PUNCHES AND KICKS THEN SLAMMED ME FACE FIRST INTO A WALL BEFORE LEAVING OUT THE CELL. I WAS LEFT UNDER THESE EXTREME CONDITIONS FOR OVER 24 HOURS.

ASIDE FROM BEING ALLOWED MY ONE HOUR RECREATION MORE REGULARLY FROM THAT DAY FORWARD, NOTHING ELSE CHANGED. IN FACT, MDC STAFF CONSISTANTLY FOUND NEW WAYS TO MENTALLY AND PSYCHOLOGICALLY TORMENT ME. NOT ONCE WAS I ALLOWED BOOKS OR ANY KIND OF READING MATERIAL FROM THE MDC SHU BOOKCART AND S.I.S

TECHNICIANS PORTNOY AND FIELDS WOULD NOT ALLOW BOOKS AND MAGAZINES ORDERED BY MY LOVED ONES AND WOULD NOT PROVIDE A NOTICE OR REASON WHY.

MY LEGAL MAIL WAS ALSO TAMPERED WITH. ESPECIALLY MAIL DIRECTLY FROM YOUR HONOR'S COURTROOM RELATED TO THIS CASE, AS WELL AS LEGAL MAIL STAMPED ATTORNEY-CLIENT PRIVILEGE WAS COMPLETELY DISREGARDED AND GIVEN TO ME AS REGULAR MAIL.

ASIDE FROM BEING DEPRIVED MEDICAL ATTENTION FOR MY EYE CONDITION AND FOR THE COVID-19 SYMPTOMS THAT LED TO THE APRIL 28, 2020 ASSAULT AND BATTERY. I WAS ALSO DEPRIVED OF MEDICAL ATTENTION FOR LESSER AILMENTS DURING MY ENTIRE 9 MONTH STAY IN MDC, SPECIFICALLY TOOTHACHES AND STOMACHACHES.

BUT MOST DEVASTATING OF ALL, WAS THE MENTAL AND PSYCHOLOGICAL TORMENT DELIBERATELY INFLICTED BY THE DEFENDANTS IN RELATION TO THE COVID-19 PANDEMIC. LIKE MOST PEOPLE, I TOO SUFFERED TERRIBLE LOSSES DURING THE WORST STAGES OF THE PANDEMIC. AND DESPITE NATIONWIDE POLICY SIGNED INTO EFFECT BY THE BOP DIRECTOR TO HELP THE INMATE POPULATION QUELL THE STRESS OF LOCKDOWNS AND QUARANTINES BOTH IN AND OUT THE BUREAU OF PRISONS. MDC STAFF WOULD NOT ALLOW ME ANY OF THIS RELIEF. UNLIKE THE REST OF THE MAX CUSTODY INMATES WHO ALREADY WERE BEING ALLOWED COMMISSARY PRIVILEGES AND 500 PHONE MINUTES BY WARDEN EDGE. I WAS ONLY ALLOWED ONE

12.

FIFTEEN MINUTE PHONECALL PER MONTH AND NO COMM-ISARY PRIVILEGES AT ALL.

AS SOME OF MY CLOSEST RELATIVES AND FRIENDS DIED, NOT ONLY WAS I DEPRIVED OF COMMUNICATION WITH MY LOVED ONES. BUT WHEN MY GRANDFATHER AND COUSIN DIED WITHIN A MONTH OF EACHOTHER, ON AT LEAST FOUR SEPERATE OCCASSIONS I ATTEMPTED TO SEND MY FAMILY MONEY OUT OF MY INMATE TRUST FUND ACCOUNT, TO HELP PAY FOR FUNERAL EXPENSES AND COVID SUPPORT. BUT WHEN I FILLED OUT AND HANDED THE MONEY FORMS TO MDC STAFF THEY REFUSED TO PROCESS THEM EVERY SINGLE TIME. I WAS NEVER GIVEN A REASON OTHER THAN WARDEN EDGE WOULD NOT SIGN OFF ON THEM. ON MULTIPLE OCCASIONS DURING WEEKLY ROUNDS, I WAS TOLD BY S.I.S TECHNICIANS PORTNOY AND FIELDS — WHOM I PERSONALLY HANDED THREE OF THE FOUR MONEY FORMS — THAT I WAS WASTING MY TIME FILLING OUT MONEY FORMS BECAUSE THEY WERE THROWING THEM STRAIGHT IN THE GARBAGE.

2.B: THE PRISON LITIGATION REFORM ACT — 42 U.S.C 1997 e(a) ("PLRA")

THE PLRA'S ADMINISTRATIVE REMEDIES EXHAUSTION REQUIREMENT STRICTLY MANDATES THAT NO ACTION SHALL BE BROUGHT WITH RESPECT TO PRISON CONDITIONS UNDER 42 U.S.C 1983 OR ANY OTHER FEDERAL LAW,

13.

BY A PRISONER CONFINED IN ANY JAIL, PRISON, OR OTHER CORRECTIONAL FACILITY UNTIL SUCH ADMINISTRATIVE REMEDIES AS ARE AVAILABLE ARE EXHAUSTED. PRISONER'S MUST COMPLETE THE PRISON'S ADMINISTRATIVE PROCESS REGARDLESS OF THE RELIEF SOUGHT BY THE PRISONER AND REGARDLESS OF THE RELIEF OFFERED BY THE PROCESS. AS LONG AS THE ADMINISTRATIVE PROCESS CAN PROVIDE SOME SORT OF RELIEF ON THE COMPLAINT STATED THEN EXHAUSTION MUST OCCUR PRIOR TO FILING SUIT. IF THE COURT CONCLUDES THAT THE PRISONER FAILED TO EXHAUST ADMINISTRATIVE REMEDIES, THE PROPER REMEDY IS DISMISSAL WITHOUT PREJUDICE.

BECAUSE THE DEFENDANTS DELIBERATELY PREVENTED ME TO EVEN INITIATE THE ADMINISTRATIVE PROCESS, I KINDLY REQUEST THE COURT TO DEEM THE EXHAUSTION REQUIREMENT FULLFILLED.

I RESPECTFULLY REMIND THE COURT THAT FROM THE DAY I ARRIVED AT MDC BROOKLYN ON 3/10/2020, UNTIL THE DAY I LEFT ON 12/2/2020, I WAS ON SOLITARY CONFINEMENT, LIUTENANT MOVE, AND CELL AND RECREATION ALONE. BOP POLICY STATES THAT WHEN FILING A GRIEVANCE A PRISONER MUST OBTAIN THE ADMINISTRATIVE REMEDIES FORMS FROM HIS COUNSELOR. I WAS NOT APPOINTED A COUNSELOR FOR AT LEAST 3 MONTHS FROM THE MOMENT I ARRIVED. AND WHEN I FINALLY WAS APPOINTED ONE SHE NEVER STOPPED BY MY CELL LONG ENOUGH FOR ME TO

14.

EVEN HAND HER A REQUEST SLIP. IN THE SHU SHE HAD A REPUTATION FOR SNEAKING IN AND OUT VERY EARLY IN THE MORNING SO SHE WOULDN'T BE STOPPED BY INMATES WHO WERE ASSIGNED TO HER — I OFTEN ASKED OTHER STAFF MEMBERS FOR THE GRIEVANCE FORMS AND I WAS ALWAYS TOLD THAT ONLY MY COUNSELOR COULD PROVIDE THEM.

BOP POLICY STRICTLY MANDATES THAT ANY PRISONER WHO FILES A GRIEVANCE MUST DO SO WITHIN A CERTAIN AMOUNT OF TIME OF THE INCIDENT.

IN MY CASE, WHEN I ATTEMPTED TO FILE A GRIEVANCE FOR DEPRIVATION OF MY ONE HOUR RECREATION, LAW LIBRARY, AND MEDICAL. I HAD NO COUNSELOR TO PROVIDE ME THE BP-8 FORM FOR INFORMAL RESOLUTION. EVERY WEEK DURING WEEKLY ROUNDS I WROTE REQUEST SLIPS AND ADDRESSED WARDEN EDGE VERBALLY ABOUT MY ISSUES AND REMINDED HIM THAT I HAD NO COUNSELOR TO PROVIDE ME WITH THE GRIEVANCE FORMS, AND EVERY WEEK HE ASSURED ME HE WOULD APPOINT ME ONE AND NEVER DID.

MEANWHILE MY CONDITIONS WENT FROM BAD TO WORSE. UNLIKE THE REST OF THE MAX CUSTODY INMATES WHO WERE ALL BLACK, BUT LIKE ME ONLY IN THE SHU SOLELY DUE TO STATUS. I WAS THE ONLY ONE NOT BEING ALLOWED REGULAR COMMUNICATION WITH MY LOVED ONES DURING THE COVID-19 PANDEMIC. ON MAY 6TH 2020, BARELY A WEEK AFTER THE ASSAULT AND BATTERY, I MANAGED TO OBTAIN A BP-9 FORM AND I WENT DIRECTLY TO THE REGIONAL OFFICE IN PHILADEL-PHIA, PA. THE FOLLOWING DAY I WAS TOLD BY THE INMATE

15.

SHU ORDERLY THAT HE WATCHED THE SHU OFFICER THROW MY FORM IN THE GARBAGE CAN IMMEDIATELY AFTER I HANDED IT TO HIM, AND EVEN HEARD HIM JOKING WITH ANOTHER OFFICER ABOUT IT. I NEVER RECEIVED A RESPONSE FROM THE REGION.

BY EARLY JULY WARDEN EDGE RETIRED AND WARDEN TELLEZ TOOK HIS PLACE. DURING HIS FIRST WEEKLY ROUNDS I SPOKE TO HIM OF ALL MY ISSUES, INCLUDING MY INABILITY TO RECEIVE GRIEVANCE FORMS FROM MY COUNSELOR. BUT ALSO OF MY MOST RECENT ATTEMPTS TO SEND MONEY TO MY IMMEDIATE FAMILY OUT OF MY INMATE ACCOUNT TO HELP PAY FOR FUNERAL EXPENSES AND COVID RELIEF. WARDEN TELLEZ SAID HE WOULD LOOK INTO IT AND TALK TO ME THE FOLLOWING WEEK.

WARDEN TELLEZ NEVER DID. ALL HE SAID WHEN I TRIED TO SPEAK TO HIM WAS THAT I WASN'T THE ONLY INMATE IN THE SHU WITH ISSUES.

ON JULY 17TH 2020, I PAID ANOTHER INMATE 20 MAILING STAMPS FOR A BP-9 FORM. ONCE AGAIN I ATTEMPTED TO FILE A GRIEVANCE TO THE REGIONAL OFFICE, THIS TIME INCLUDING MY RECENT ISSUES AS WELL. AND ONCE AGAIN I NEVER RECEIVED A RESPONSE. BUT THE MOST OUTRAGEOUS PART OF IT ALL WAS THE CRACKDOWN BY S.I.S TECHNICIANS PORTNOY AND FIELDS. DURING THEIR WEEKLY ROUNDS THEY WALKED AROUND THE TIER THREATNING INMATES WITH TAKING THEIR PHONE AND COMMISSARY PRIVILEGES IF THEY FOUND OUT THEY WERE GIVING ME GRIEVANCE FORMS. UNDERSTANDABLY SO, FROM THAT DAY FORWARD NO INMATE WOULD GIVE OR EVEN SELL ME ANYTHING THAT I WAS SUPPOSED TO GET FROM MY UNIT TEAM

16.

OUT OF FEAR OF LOSING THEIR PRIVILEGES.

AS A DIRECT RESULT OF BEING DEPRIVED OF THE GRIE-VANCE FORMS DURING MY ENTIRE STAY AT MDC. I WAS NOT ONLY UNABLE TO CHALLENGE MY CONDITIONS, BUT I WAS ALSO UNABLE TO APPEAL AN INCIDENT REPORT THAT RESULTED IN THE LOSS OF 56 DAYS OF GOOD CONDUCT TIME. LIUTENANT BARR, WHO WAS PRESENT DURING THE HEARING AND WAS TOLD BY THE HEARING OFFICER THAT I WAS NEVER SERVED THE ESSENTIAL UDC PAPERS AND THEREFORE DEPRIVED ME OF MY RIGHT TO CALL WITNESSES ON MY BEHALF, SUGGESTED THAT THE INCIDENT REPORT SHOULD BE EXPUNGED DUE TO THE DISCREPANCY. LIUTENANT BARR WOULD HAVE NONE OF IT AND WENT AGAINST BOP POLICY WITH THE HEARING. TO MAKE SURE THAT I COULDN'T APPEAL, HE ALSO DEPRIVED ME OF A REPORT OF THE HEARING NECESSARY IN ORDER TO FILE SUCCESSFULLY IN THE REGIONAL OFFICE.

I KINDLY REQUEST THE COURT TO CONSIDER THAT I WENT ABOVE AND BEYOND MY ABILITY TO PROPERLY EXHAUST MY ADMINISTRATIVE REMEDIES. I EVEN PAYED OTHER INMATES FOR THE GRIEVANCE FORMS WHEN I WAS UNABLE TO OBTAIN THEM FROM MY COUNSELOR. AND YET MDC STAFF UNDER ORDERS OF WARDEN EDGE, WARDEN TELLEZ, AND CAPTAIN WHITE, OBSTRUCTED MY ATTEMPTS AT EVERY TURN FOR THE OBVIOUS REASONS THAT THEY WERE AWARE AND DELIBERATELY CONSPIRED TO VIOLATE MY ESTABLISHED CONSTITUTIONAL RIGHTS AS A PRISONER

17.

I ALSO REMIND THE COURT THAT HAD I BEEN ABLE TO CONTINUE THE GRIEVANCE PROCESS ALL THE WAY TO THE CENTRAL OFFICE IN WASHINGTON D.C. I WOULD HAVE, BUT BY THEN NOBODY IN THE SHU WOULD SELL ME THE BP-10 FORM OUT OF FEAR OF RETRIBUTION BY S.I.S TECHNICIANS PORTNOY AND FIELDS.

LASTLY, ACCORDING TO BOP POLICY IT IS NOT A PRISONER'S BURDEN TO OBTAIN THE GRIEVANCE FORMS ANY WAY HE CAN. THAT IS SOLELY THE RESPONSIBILITY OF A COUNSELOR TO PROVIDE THEM. SO IF HE DECIDES THAT FOR WHATEVER REASONS — INCLUDING PERSONAL — HE DOES NOT WISH TO PROVIDE THEM, THEN THERE IS SIMPLY NOTHING A PRISONER CAN DO ABOUT IT OTHER THAN COM-PLAIN TO THE WARDEN AND HOPE HE RECTIFIES IT.

FOR THE FOREGOING REASONS I KINDLY REQUEST THE COURT TO CONSIDER MY ADMINISTRATIVE REMEDIES FULLY EXHAUSTED.

3. INJURIES: DUE TO THE 4/28/2020 ASSAULT AND BATTERY BY MDC STAFF, I SUSTAINED LACERATIONS AND BRUISES TO MY FACE, HEAD, CHEST, BACK, WRISTS, AND LEGS. I ALSO SUFFERED A CONCUSSION AND A FRACTURED JAW, NOSE, TWO BROKEN TEETH AND WAS URINATING BLOOD FOR THREE DAYS AFTER THE BEATING. ASIDE FROM OINTMENTS AND BANDAGES I RECEIVED NO OTHER MEDICAL ATTENTION.

DUE TO THE DEPRIVATION OF MEDICAL TREATMENT

18.

FOR MY EYE DISEASE, MY EYE SIGHT GOT SIGNIFICANTLY WORSE DURING MY TIME IN MDC. DURING MY LAST EYE EXAM I WAS TOLD THAT NO PRESCRIPTION COULD IMPROVE THE VISION ON MY RIGHT EYE BECAUSE THE CORNEA WAS TOO DAMAGED FOR LACK OF TREATMENT. THE ONLY REMEDY IS AN EYE TRANSPLANT.

AND DUE TO THE DELIBERATE INDIFFERANCE, RACIAL DISCRIMINATION, AND DEPRIVATION OF MY WELL ESTABLI-SHED CONSTITUTIONAL RIGHTS BY THE DEFENDANTS. THE MENTAL ANGUISH AND TORMENT I SUFFERED DURING THE COVID-19 PANDEMIC HAS CAUSED SEVERE DAMAGE TO MY MENTAL HEALTH.

4. RELIEF: FOR THE PHYSICAL INJURIES SUSTAINED DURING THE 4/28/2020 ASSAULT AND BATTERY, THE DEPRIVATION OF MEDICAL TREATMENT FOR THOSE INJURIES AND FOR MY EYE DISEASE, AND THE MENTAL ANGUISH SUFFERED AT THE HANDS OF THE DEFENDANT'S DURING MY ENTIRE STAY AT MDC BROOKLYN, BOTH PUNITIVE AND NON PUNI-TIVE MONETARY DAMAGES IN AN AMOUNT DETERMINED BY A JURY SHOULD BE AWARDED. AS WELL AS A SET POLICY FOR MAX CUSTODY INMATES IN THE SHU SOLELY DUE TO STATUS SHOULD BE IMPLEMENTED BY THE BOP, TO PREVENT BOP STAFF FROM ABUSING THEIR POWER AND COMMITTING CONSTITUTIONAL VIOLATIONS DURING THE COURSE OF THEIR EMPLOYMENT.

19

I DECLARE UNDER PENALTY OF PERJURY THAT ON 10-10-2022   I DELIVERED THIS COMPLAINT TO PRISON AUTHORITIES AT ADX FLORENCE          TO BE MAILED TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

10/6/22                          R. Mendoza — PLAINTIFF

U.S. PENITENTIARY MAX
P.O. BOX 8500
FLORENCE, CO. 81226-8500

20.



Name: RUDY MENDOZA
Reg No: 90731-054
U.S. Penitentiary MAX
P.O. Box 8500
Florence, CO. 81226-8500

10/14/22

— CLERK —

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

225 CADMAN PLAZA EAST

BROOKLYN, NY 11201

USMS

*Legal Mail* ✻ 10/10/22

FEDERAL PRISON CAMP
P.O. BOX 5000
FLORENCE, COLORADO 81226

OCT 13 2022